# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN E. PARKINSON, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  04-CV-838-SAJ |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER[1/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2/] Plaintiff asserts that the Commissioner erred because (1) the ALJ did not fully develop the record with respect to Plaintiff's complaints of pain and depression; (2) the ALJ erred in finding no evidence of treatment for depression; (3) the ALJ erred in finding there was no record of the Plaintiff taking any type of antidepressant medications either currently or in the past; (4) the ALJ failed to adequately examine Plaintiff's credibility; and (5) the ALJ failed to order a consultative examination and develop the record.  For the reasons discussed below, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

---

[1/]  This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2/]  Administrative Law Judge Lantz McClain (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated April 28, 2004. [R. at 8 - 20]. Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on August 27, 2004. [R. at 4].

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff applied for social security disability benefits alleging he became unable to work beginning July 11, 2002. [R. at 48]. Plaintiff was born February 25, 1955. [R. at 48].

After July 11, 2002, Plaintiff attempted to perform a few jobs but never worked full-time. Plaintiff submitted a statement indicating he had not made more than $800.00 per year after 2002. [R. at 81].

In his disability interview outline form, Plaintiff wrote that he woke each day, had coffee and cigarettes, watched the news and other television shows. [R. at 83]. Plaintiff indicated he had difficulty sleeping and slept approximately six hours each night. [R. at 83]. Plaintiff lived in a house with his wife and two sons. [R. at 83]. Plaintiff noted that he sometimes experienced difficulty putting on his clothes and shoes. [R. at 84]. Plaintiff does some house cleaning and goes to the store with his wife to purchase food. [R. at 85]. Plaintiff wrote that he reads the Bible for two hours every Saturday. [R. at 86].

Plaintiff's medication list indicated Plaintiff took Bextra, Ibuprofen, and Tylenol Extra Strength for pain.

Plaintiff was examined August 14, 2001. X-rays confirmed arthroplasty with an MRI showing no evidence of a cuff tear, but a marked abnormality in the A/C joint. [R. at 103]. Plaintiff was to undergo A/C arthroplasty of the right shoulder. [R. at 104]. Plaintiff had surgery on August 14, 2001, and was discharged August 15, 2001. [R. at 105].

By December 2001, Plaintiff's range-of-motion was much better. Plaintiff had some pain. Plaintiff's doctor gave him a release date of January 7, 2002. [R. at 108].

On May 1, 2002, Plaintiff complained of neck pain with pain continuing down his right arm. Plaintiff stated the pain had bothered him for the previous two years. [R. at 115]. An

electrodiagnostic study indicated moderate bilateral carpal tunnel syndrome. Clinical correction was recommended. [R. at 116].

On June 21, 2002, Plaintiff had a cervical and lumbar myelogram. [R. at 121]. The radiologist's impressions were: neural foraminal stenosis on the right at C5-C6 and C6-C7, disk extrusion on the right C6-C7 and spinal canal narrowing. [R. at 123]. An MRI scan dated January 31, 2003 was interpreted as indicating advanced degenerative disc disease at C5-C6 and C6-C7 level with severe degenerative bone spur formation at the right of C5-C6 and C6-C7 with narrowing of the neural foramina. [R. at 124].

Plaintiff was admitted February 7, 2003 for carpal tunnel surgery and discharged February 7, 2003. [R. at 129]. The surgeon noted that Plaintiff had excellent relief of his leg pain postoperatively. [R. at 130].

A Physical Residual Functional Capacity Assessment form completed by Thurma Fiegel, M.D., on May 6, 2003, indicated Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk six hours in an eight hour day and sit six hours in an eight hour day. [R. at 159]. A second Physical RFC assessment form completed July 21, 2003, by a different social security doctor was consistent with Dr. Fiegel's RFC assessment. [R. at 176].

An evaluation dated June 9, 2003 of Plaintiff's physical abilities noted that Plaintiff's current physical capabilities placed Plaintiff in the light physical demand level. [R. at 166]. Plaintiff could lift or carry up to five pounds continuously, six to ten pounds frequently, and occasionally 11 - 20 pounds. [R. at 166]. Plaintiff could sit for seven to eight hours in an eight hour day and stand five to six hours in an eight hour day. [R. at 167].

On October 22, 2003, Kevin M. Dukes, M.D., wrote a letter on behalf of Plaintiff. [R. at 209]. He noted that Plaintiff complained of right shoulder pain dating back to a work-related injury. [R. at 209]. Plaintiff was currently taking Zoloft for depression related to his injuries. The doctor noted that Plaintiff would have severe difficulty in returning to any work that involved significant lifting activity. [R. at 210].

A form completed December 16, 2003, by John A. Marberry, M.D., indicates Plaintiff is to perform no work or school at this time because Plaintiff is under medical care with regard to Plaintiff's right shoulder. [R. at 207].

The record contains a letter from Kenneth R. Trinidad, D.O., dated February 20, 2004. [R. at 211]. Plaintiff complained of constant pain and spasm in his neck and upper back, restricted movement in his neck, weakness in his right arm, pain and stiffness in his shoulder, pain in his right wrist, and weak grip strength on the right. [R. at 212]. Due to Plaintiff's impairments, the doctor noted that further therapy would probably not assist Plaintiff. He indicated that Plaintiff should be treated with ongoing pain management and depression. [R. at 216]. Plaintiff was unable to return to his former position and was encouraged to undergo vocational evaluation for possible retraining. The doctor noted that if, due to Plaintiff's chronic pain he was not a candidate for retraining, Plaintiff was totally disabled. [R. at 217].

Plaintiff testified at a hearing before the ALJ on March 11, 2004. [R. at 218]. Plaintiff stated that he lives in Disney, Oklahoma in a house with his wife and two sons who are 17 and 15 years old. [R. at 225].

Plaintiff completed tenth grade in school. [R. at 225]. Plaintiff did not obtain a GED. [R. at 226]. Over the past 15 years Plaintiff has primarily done home improvement and heavy equipment work. [R. at 226].

Plaintiff was injured while working on the job in April of 2000. [R. at 227]. Plaintiff stated that his doctor recommended surgery and told him that he could not work. [R. at 229]. Plaintiff had shoulder surgery. [R. at 229]. Plaintiff also had surgery on his neck and a carpal tunnel release. [R. at 230].

According to Plaintiff, he continues to experience headaches, pain in his neck, arms, and hands. [R. at 231]. Plaintiff believes he could stand or walk for ten to fifteen minutes, but then he would be required to sit. [R. at 235]. Plaintiff does not believe he could work an entire eight hour day because sometimes his pain is so bad that he has to lay down. [R. at 236]. According to Plaintiff, even on a good day he is required to lay down at least one time during an eight hour period. Plaintiff sometimes lays down for half of one hour up to three hours. [R. at 237].

Plaintiff noted that he cannot vacuum because the action required to vacuum hurts his neck and his arms. [R. at 241]. Plaintiff stated that he previously enjoyed doing yard work but that he is unable to do any yard work with his problems. [R. at 242].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. § 404.1520. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's determination is rational.  *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the RFC to perform light exertional work activity. [R. at 17].  Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about six hours in an eight hour day, and sit about six hours in an eight hour day.  The ALJ found Plaintiff should avoid work above shoulder level and that he was unable to use his hands for repetitive tasks on a constant basis.  [R. at 17].  The ALJ determined that Plaintiff could not perform his past relevant work.  [R. at 17].  Based on the

---

[4/]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

testimony of a vocational expert the ALJ found that Plaintiff was not disabled. [R. at 18].

## IV. REVIEW

**ALJ'S CREDIBILITY ANALYSIS REQUIRES REVERSAL**

The legal standards for evaluating pain are outlined in 20 C.F.R. §§ 404.1529 and 416.929, and were addressed by the Tenth Circuit Court of Appeals in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). First, the asserted pain-producing impairment must be supported by objective medical evidence. *Id.* at 163. Second, assuming all the allegations of pain as true, a claimant must establish a nexus between the impairment and the alleged pain. "The impairment or abnormality must be one which 'could reasonably be expected to produce' the alleged pain." *Id.* Third, the decision maker, considering all of the medical data presented and any objective or subjective indications of the pain, must assess the claimant's credibility.

> [I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence.

*Id.* at 164. In assessing the credibility of a claimant's complaints of pain, the following factors may be considered.

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). *See also Luna*, 834 F.2d at 165 ("For example, we have noted a claimant's persistent attempts to find relief for his pain and

his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems. The Secretary has also noted several factors for consideration including the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.").

In *Kepler v. Chater*, 68 F.3d 387, (10th Cir. 1995), the Tenth Circuit determined that an ALJ must discuss a Plaintiff's complaints of pain, in accordance with *Luna*, and provide the reasoning which supports the decision as opposed to mere conclusions. *Id.* at 390-91.

> Though the ALJ listed some of these [*Luna*] factors, he did not explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.

*Id.* at 391. The Court specifically noted that the ALJ should consider such factors as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Id. at 391. The Tenth Circuit remanded the case, requiring the Secretary to make "express findings in accordance with *Luna*, with reference to relevant evidence as appropriate, concerning claimant's claim of disabling pain." *Id.*

In this case, the ALJ never addressed the first two elements of *Luna* – whether the asserted pain-producing impairment is supported by objective medical evidence, and whether claimant has established a nexus between the impairment and the asserted pain. The ALJ simply starts with step three of the three-part *Luna* analysis. Therefore, the Court assumes that the ALJ did find that the record contains objective medical evidence

supporting a pain-producing impairment and that Plaintiff's allegations of pain and inability to support are casually connected to the established medical impairments. The ALJ basically skips to step three of *Luna.* However, the ALJ never discusses any of the factors mentioned in *Luna*, and basically dismisses all of Plaintiff's complaints based upon the objective medical record – which is expressly discouraged by *Luna*.

The ALJ addressed Plaintiff's credibility finding that Plaintiff's symptoms are "disproportionate in comparison to the usual expected severity of his condition." The ALJ's credibility analysis continues:

> Therefore, the alleged effect of the claimant's symptoms on activities of daily living and basic task performance is not consistent with the total medical and non-medical evidence in the file. The claimant's statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entire credible in light of discrepancies between the claimant's alleged symptoms and objective documentation in [the] file. The physical findings and supporting data do not closely corroborate or correlate with the claimant's subjective complaints. The records show that on January 5, 2004, that Dr. Marberry stated the claimant's symptoms "had always been a little bit more than what he had found." He further stated the claimant's "subjective complaints had not totally correlated with the objective findings."

[R. at 16]. In this instance, all of the ALJ's discussion of Plaintiff's credibility focuses upon discounting Plaintiff's complaints based on Plaintiff's medical record – which is exactly what *Luna* discourages. The ALJ does discuss, in a limited fashion, Plaintiff's daily activities. However, the ALJ concludes that first, Plaintiff's reports of his daily activities are not credible because they are not verified, and second that they are not credible because they are not supported by the medical evidence. Therefore, the ALJ finds Plaintiff not credible because the daily activities are not verified and because the medical evidence does not

support such a stringent limit in Plaintiff's activities. Again, the ALJ's analysis runs contra to *Luna*. The ALJ notes the following:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

[R. at 16].

Finally, the ALJ discusses, in a limited degree, Plaintiff's surgeries. However, the ALJ concludes that the surgeries were successful so Plaintiff should no longer have the degree of pain that Plaintiff states he has.

> The record also shows the claimant has undergone surgery for his alleged impairments, which certainly suggests that the symptoms were genuine. While that fact would normally weight in the claimant's favor, it is offset by the fact that the records reflect that the surgeries have generally been successful. The evidence reveals that following both surgeries, the claimant was released to return to work in December 2001 and then again in January of 2004.

[R. at 16]. Once again, the ALJ's analysis falls short.

As discussed in *Luna*, "[I]f an impairment is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." In this case, although the ALJ does not discuss the three steps of *Luna*, because the ALJ proceeded with the credibility analysis, the Court assumes that the ALJ found that the first two steps of *Luna* were met.

-- 11 --

Therefore, in assessing the credibility of a claimant's complaints of pain, the ALJ should have focused upon the factors identified in *Luna* and *Kepler*. Those factors include the levels of medication, the effectiveness of the medication, the attempt (medical or nonmedical) to obtain relief from pain, the frequency of medical contacts, daily activities, and subjective measures of credibility that are peculiarly within the judgment of the ALJ. The ALJ did not discuss these factors. Although the Court will not impose a duty upon the ALJ to follow the precepts of *Luna* on a line-by-line basis, the Court cannot accept an ALJ's failure to discuss any of the factors in the manner intended by *Luna*. In this case, the ALJ primarily discounted all of Plaintiff's subjective complaints based solely upon the objective medical record with no discussion of the factors mentioned in *Luna*. Although the ALJ mentioned Plaintiff's daily activities, the ALJ then discounted Plaintiff's testimony based upon lack of verification and the medical record. In short, the ALJ's credibility analysis is simply not the type of analysis contemplated by either *Luna* or *Kepler*. On remand, the ALJ should evaluate Plaintiff's credibility in accordance with *Luna* and *Kepler*.

Dated this 1st day of February 2006.

Sam A. Joyner
United States Magistrate Judge